Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 3012 | **DATE** | 3/5/2002 |
| **CASE TITLE** | VR Holdings, Inc. and Valley Rivet Company, Inc. vs. LaSalle Business Credit, Inc., Durrel Corporation, Michael Sharkey, Herbert M. Kidd II, and Ellen T. Cook | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

12(b)(6) Motions to Dismiss by the LaSalle Defendants and Durrel

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons set forth in the attached Memorandum Opinion and Order, the LaSalle Defendants' (LaSalle, Sharkey, Kidd, Cook) motion to dismiss for failure to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6) [12-1] is GRANTED on Counts I, VI, VII, and VIII and DENIED on Counts II, III, IV, V, and IX of the Complaint. Durrel's motion to dismiss for failure to state a claim upon which relief may be granted [15-1] is DENIED.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | MAR - 6 2002 | |
| | Notified counsel by telephone. | | date docketed | 45 |
| X | Docketing to mail notices. | U.S. DISTRICT COURT | 15 | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 02 MAR -5 PM 6:00 | date mailed notice | |
| klb (lc) | courtroom deputy's initials | 01 C3-3012 Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

DOCKETED
MAR - 6 2002

VR HOLDINGS, INC., a Delaware )
corporation and VALLEY RIVET )
COMPANY, INC., an Illinois corporation, )
)
      Plaintiffs, )
) No. 01 C 3012
  v. )
) HONORABLE DAVID H. COAR
LASALLE BUSINESS CREDIT, INC., a )
Delaware corporation, DURREL )
CORPORATION, an Ohio corporation, )
MICHAEL SHARKEY, HERBERT M. )
KIDD II, and ELLEN T. COOK, )
)
      Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiffs Valley Rivet Company, Inc. ("VRC") and VR Holdings, Inc. ("VRH") (together, VRC and VRH are referred to as the "Plaintiffs"), filed a nine-count Complaint against LaSalle Business Credit, Inc. ("LaSalle"), Durrel Corporation ("Durrel") and Michael Sharkey ("Sharkey"), Herbert M. Kidd II ("Kidd"), and Ellen T. Cook ("Cook") (collectively, Sharkey, Kidd and Cook are referred to as the "Individual Defendants"). The complaint asserts various claims against LaSalle and the Individual Defendants (together, referred to as the "LaSalle Defendants") arising out of the lending relationship between LaSalle and VRC which commenced in May 1999. The complaint also alleges Durrel engaged in civil conspiracy. Before this court are two Motions to Dismiss for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Durrel and the LaSalle

-1-



Defendants. For the reasons set forth below, the LaSalle Defendants' motion is denied in part and granted in part and Durrel's motion is denied.

## Factual Background

LaSalle and VRC commenced their lending relationship on May 24, 1999 with the execution of a Loan and Security Agreement and other related documents (the "Loan Agreement"), whereby LaSalle provided VRC with certain term loans, a capital expenditure loan facility, a letter of credit facility, and a revolving line of credit by which funds were made available based on a calculation which considered a percentage of eligible accounts receivable and eligible inventory. The Individual Defendants, all officers of LaSalle, were involved in the negotiation, execution and/or management of the Loan Agreement.

In December, 1999, VRC disclosed to LaSalle that its inventory had been materially overstated for a number of years, and that VRC was in default of the Loan Agreement because it was no longer in compliance with portions of its covenants and lending ratios set forth in the Loan Agreement. LaSalle declared VRC to be in default of the Loan Agreement in a December 27, 1999 letter. LaSalle did not, however, immediately accelerate the outstanding loan amount and foreclose on its collateral. Instead, LaSalle agreed, beginning in January 2000, to forbear from exercising its available remedies in order for VRC to attempt to bring itself into compliance with the Loan Agreement as modified by subsequent agreements to forbear.

On January 19, 2000, LaSalle and VRC entered into the first of 13 Forbearance Agreements and amendments thereto, the last of which was executed on November 3, 2000 (together, the Forbearance Agreements and amendments are referred to as the "Forbearance Agreements"). In each Forbearance Agreement, VRC acknowledged its prior default(s), and

LaSalle and VRC agreed to certain amendments to the Loan Agreement and/or prior Forbearance Agreements, including extensions of time, clarifications of or additional reporting requirements, and other performance-related targets for VRC. In consideration of the agreements of LaSalle, including the agreement to continue to forbear, each Forbearance Agreement also contained VRC's release of LaSalle from any and all claims which VRC "may now or hereafter own, hold, have or claim to have against" LaSalle and its present and former officers.

On December 11, 2000, shortly after the term of the last Forbearance Agreements had expired, the Plaintiffs filed a petition for relief pursuant to chapter 11 of the United States Bankruptcy Code. On April 26, 2001, the Plaintiffs filed their nine-count Complaint in this Court. Durrell and the LaSalle Defendants in turn filed Motions to Dismiss for failure to state a claim upon which relief may be granted.

**Analysis**

A claim should not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957) (citations omitted). The plaintiff gets the benefit of the doubt with ambiguities and inferences. Also, the Court treats well-pleaded facts as true for purposes of the motion. See, e.g., Chu v. Sabratek Corp., 100 F. Supp. 2d 815 (N.D. Ill. 2000).

A. LaSalle Defendants' Motion to Dismiss

The LaSalle Defendants move to dismiss Plaintiffs' Complaint because the Illinois Credit Act, 815 ILCS 160, et seq. ("the Credit Act"), bars substantial portions of the Complaint as a matter of law, including the entirety of Counts I, VI, VII, and VIII.. The Credit Act bars all

claims relating to a "credit agreement" unless those claims are based upon a written agreement signed by both parties. The LaSalle Defendants further claim that dismissal is proper because several of the counts in the Complaint rely on the duty of good faith and fair dealing which cannot override the express provisions of the loan agreement. Plaintiffs maintain, however, that the Credit Act does not apply to the facts as alleged in the Complaint.

In order to address the LaSalle Defendants' first argument, the Court must determine whether the Credit Act applies to the facts as alleged. The Credit Act states in relevant part:

> For the purpose of this Act, the following terms have the meanings given them; 'Credit Agreement' means an agreement or commitment by a creditor to lend money or extend credit or delay or forbear repayment of money not primarily for personal, family or household purposes, and not in connection with the issuance of credit cards.

815 ILCS 160/1.

> Credit Agreements to be in writing. A debtor may not maintain an action on or in any way related to a credit agreement unless the credit agreement is in writing, expresses an agreement or commitment to lend money or extend credit or forbear repayment of money, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor.

815 ILCS 160/2.

> Actions not considered agreements. The following actions do not give rise to a claim, counter-claim, or defense by a debtor that a new credit agreement is created, unless the agreement satisfies the requirements of Section 2 [815 ILCS 160/2]:
> (1) the rendering of financial advice by a creditor to a debtor;
> (2) the consultation by a creditor with a debtor; or
> (3) the agreement by a creditor to modify or amend an existing credit agreement or to otherwise take certain actions, such as entering into a new credit agreement, forbearing from exercising remedies in connection with an existing credit agreement, or rescheduling or extending installments due under an existing credit agreement.

815 ILCS 160/3.

Courts have uniformly barred the claims and defenses of debtors which have relied on the existence of oral credit agreements. See Resolution Trust Corporation v. Thompson, 989 F.2d 942 (7th Cir. 1993) (court barred claims and defenses of debtor based on alleged oral promise of creditor to forgive unpaid balance of loan); Whirlpool Financial Corporation v. Sevaux, 874 F. Supp. 181 (N.D. Ill. 1994) (hereinafter "Whirlpool II") (court barred all claims and defenses relying on alleged oral promise to finance a loan); General Electric Capital Corporation, 1993 U.S. Dist. LEXIS 17690, No. 93 C 5614, 1993 WL 524814 (N.D. Ill. Dec. 15 1993) (court barred all claims and defenses related to an alleged oral agreement to extend or modify existing written credit agreements); McAloon v. Northwest Bancorp, Inc., 274 Ill. App. 3d 758, 654 N.E.2d 1091, 211 Ill. Dec. 281 (2d Dist. 1995) (court barred all claims and defenses founded on alleged oral representations by bank to lend money); First National Bank in Staunton v. McBride Chevrolet, Inc., 267 Ill. App. 3d 367, 642 N.E.2d 138, 204 Ill. Dec. 676, (4th Dist. 1994) (court barred all claims and defenses relying on oral promise of bank to hold a check overnight). The Credit Act bars all claims, whether sounding in contract or tort. First National Bank in Staunton v. McBride Chevrolet, Inc., 267 Ill. App. 3d at 372, 642 N.E.2d 142. Moreover, and importantly, the Credit Act is to be construed broadly to prohibit all claims arising from alleged extra-contractual representations, omissions or conduct in a credit relationship. McAloon v. Northwest Bancorp, Inc., 274 Ill. App. 3d 758, 762, 211 Ill. Dec. 281, 654 N.E.2d 1091, 1094 (2d Dist. 1995).

Count I (breach of contract) and Count VII (fraud) are premised upon LaSalle's alleged failure to disclose to VRC prior to the Loan Closing Date that LaSalle was reducing the credit availability under the Credit Facility because it was not including the Vendor Inventory in calculating VRC's borrowing base. Count VI (economic duress) and Count VIII (fraud) are

premised upon LaSalle's alleged duress and fraud in the procurement of the 13 Forbearance Agreements. According to the Plaintiffs, the Credit Act does not act as a bar in this case because these claims do not depend upon the existence of any oral agreements. They do, however, depend on alleged omissions from the credit agreement. "There is no limitation as to the type of actions by a debtor which are barred by the Act, so long as the action is in any way related to a credit agreement." First National Bank v. McBride Chevrolet, Inc., 267 Ill. App. 3d 367, 372, 204 Ill. Dec. 676, 642 N.E.2d 138 (1994). There is no dispute, nor could there be, that the alleged breach of contract, fraud, and economic duress claims are related to the credit agreement. In Westinghouse, this Court recognized that the Illinois legislature concluded that justice was best served by putting all parties to covered transactions on notice that the agreement would be enforced as written. Westinghouse Elec. Corp. v. McLean, 938 F. Supp. 487, 492 (N.D. Ill. 1996). "Winks and nods and whispered promises to deviate therefrom would not be enforced." Id. Thus on notice, entities like the defendants would insist that the entire agreement be in writing. Id. Illinois courts have concluded that they must apply the act even in the face of the harsh consequences. See, e.g., First National Bank in Staunton v. McBride Chevrolet, Inc., 267 Ill. App. 3d at 372-73, 642 N.E.2d at 142 ("We recognize such an [broad] interpretation [of the Credit Act] causes a harsh result for bank customers in some circumstances. The Act is very broadly worded, however, and dictates such a result."). Pursuant to the Credit Act LaSalle cannot be liable for pre-contractual omissions. LaSalle's liability, if any, must be premised on the Loan Agreement itself. The Plaintiffs offer no statutory or case authority which contradicts this broad application of the Credit Act. Accordingly, each of Counts I, VI, VII, and VIII are dismissed for failure to state a claim upon which relief may be granted.

The LaSalle Defendants next argue that the Complaint must be dismissed because the duty of good faith and fair dealing cannot be employed to override an express provision in a contract. In Count II, VRC alleges that LaSalle breached the Loan Agreement by breaching the duty of good faith and fair dealing. Specifically, VRC alleges that LaSalle "[took] actions that made it impossible for VRC to perform under the Loan Agreement..." Complaint ¶ 106. Breach of the duty of good faith and fair dealing arises only when one party is "vested with contractual discretion" and exercises that discretion "arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectation of the parties." Bank One v. Roscetti, 309 Ill.App.3d 1048, 1059-60, 723 N.E.2d 755, 764. Accordingly, it is axiomatic that "[t]he good faith duty to exercise contractual discretion reasonably is inapplicable where no contractual discretion exists." Id.; see also Northern Trust Co. v. VIII South Michigan Assocs., 276 Ill.App.3d 355, 368, 657 N.E.2d 1095, 1104-05 (1st Dist. 1995) (claim for breach of duty of good faith dismissed as a matter of law because guarantor failed to allege facts showing bank had contractual discretion).

The LaSalle Defendants argue that Count II should be dismissed because it is entirely devoid of any allegation that the Loan Agreement vested LaSalle with contractual discretion which LaSalle exercised arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties. The LaSalle Defendants also argue, in the alternative, that its actions were justified under the Loan Agreement. While the Illinois Civil Practice Act requires fact pleading, Fed. R. Civ. P. 8 only requires that a pleading contain a "short and plain statement" of the claim. In this case, the LaSalle Defendants have adequate notice of the claim against them. This Court is not convinced that the Plaintiffs can prove no facts in support of its claim. Accordingly, the LaSalle Defendants' motion to dismiss Count II is denied.

Counts III and IV are for tortious interference with contractual relations.. Under Illinois law, the essential elements of a cause of action for tortious interference with contract are: "[1] a valid contract, [2] defendant's knowledge of the existence of the contract, [3] defendant's intentional and malicious inducement of the breach of the contract, [4] breach of contract caused by defendant's wrongful conduct, and [5] resultant damage to the plaintiff." Fuller v. Chicago College of Osteopathic Medicine, 719 F.2d 1326, 1331 (7th Cir. 1983) (quoting Swager v. Couri, 60 Ill. App. 3d 192, 196, 376 N.E.2d 456, 459, 17 Ill. Dec. 457 (1978), aff'd, 77 Ill. 2d 173, 395 N.E. 2d 921, 32 Ill. Dec. 540 (1979)). The LaSalle Defendants argue that Count III should be dismissed for failure to state a claim because Count III does not allege that the acts of the defendants were immediately directed at a third party which caused the third party to breach its contract with the plaintiff. Having alleged that the LaSalle Defendants "improperly interfered in the Fastener Company Transaction by taking actions which made it impossible for VRH to complete the Fastener Company Transaction..." (Complaint ¶ 111), VRH is under no obligation to plead further the facts that he believes support his claim. See Cook v. Winfrey, 141 F.3d 322, 328 (7th Cir. 1998) (explaining the minimal pleading requirements under the Federal Rules do not even require the plaintiff to identify the third party). Consistent with the allegations in Count III, Plaintiff may be able to prove a set of facts (including actions directed at the third party) that would entitle the Plaintiff to relief. Thus, the LaSalle Defendants' motion to dismiss Count III of the Complaint is denied.

Count IV alleges that the Defendants engaged in improper actions with respect to VRC which made it impossible for VRC to repay its loan which VRH had guaranteed. The Complaint also alleges that the Defendants improperly interfered in the VRH Guaranty by forcing VRH to

-8-

pay the Insurance Recovery to VRC. As in Count III, the LaSalle Defendants have notice of the claim against them. It is not clear that the Plaintiffs can prove no facts in support of their claim. Accordingly, the LaSalle Defendants' motion to dismiss Count IV is denied.

Count V alleges that the Defendants wrongly interfered in the conduct and operation of the business of VRC. The LaSalle Defendants argue that Count V should be dismissed because it does not allege any acts by LaSalle directed at third parties with whom VRC conducted business or had an expectancy to conduct business. See DuPage Aviation Corp. v. DuPage Airport Authority, 229 Ill.App.3d 793, 803, 594 N.E.2d 1334, 1340 (2nd Dist. 1992); see also Ontap Premium Quality Waters, Inc. v. Bank of Northern Illinois, N.A., 262 Ill.App.3d 254, 263, 634 N.E.2d 425, 432 (2nd Dist. 1994). Thus, according to the LaSalle Defendants, the claim is no more than an attempt by VRC to convert is breach of contract claim into a tort claim. It is improper for this Court to determine whether the Plaintiffs have a viable claim or are attempting to recharacterize the claim at this juncture. Plaintiffs have satisfied the notice pleading requirements under the Federal Rules, as they are not required to identify the third party. See Cook, 141 F.3d 328. Thus, the LaSalle Defendants' motion to dismiss Count V is denied.

Count IX of the Complaint alleges civil conspiracy by Defendants LaSalle, Sharkey and Durrel Corporation in wrongfully conspiring to liquidate the assets of VRC solely for the benefit of LaSalle and Durrel Corporation without regard for the rights of VRC, VRH, and VRC's unsecured creditors. Defendants argue that Count IX fails because LaSalle was merely exercising its rights and remedies under the Loan Agreement and the Forbearance Agreements and at most, the actions of LaSalle were breaches of contract and not tortious. Civil conspiracy is defined as "a combination of two or more persons for the purpose of accomplishing by concerted

action either an unlawful purpose or a lawful purpose by unlawful means." McClure v. Owens Corning Fiberglass Corp., 188 Ill.2d 102, 720 N.E.2d 242 (Ill. 1999) (quoting Buckner v. Atlantic Plant Maintenance, Inc., 182 Ill. 2d 12, 23, 230 Ill. Dec. 596, 694 N.E.2d 565 (Ill. 1998)). It is clear that the Plaintiffs have alleged that the actions engaged in by the LaSalle Defendants were wrongful. Whether or not the actions were actually wrongful is not for this Court to determine at this time. Accordingly, the LaSalle Defendant's motion to dismiss Count IX is denied.

B.  Durrel's Motion to Dismiss

Durrel moves to dismiss the Plaintiffs' Complaint for failure to state claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Durrel alleges that the Complaint asserts no real claims against Durrel. Count IX of the Complaint, the only count in which relief against Durrel is requested, alleges civil conspiracy. Durrel, maintains, however, that the Plaintiffs have not alleged sufficient facts to make out a claim against Durrel for civil conspiracy.

Civil conspiracy is defined as "a combination of two or more persons for the purpose of accomplishing by concerted action either an unlawful purpose or a lawful purpose by unlawful means." McClure v. Owens Corning Fiberglass Corp., 188 Ill.2d 102, 720 N.E.2d 242 (Ill. 1999) (quoting Buckner v. Atlantic Plant Maintenance, Inc., 182 Ill. 2d 12, 23, 230 Ill. Dec. 596, 694 N.E.2d 565 (Ill. 1998)). In order to state a claim for civil conspiracy, a plaintiff must allege an agreement and a tortious act committed in furtherance of that agreement. Adcock v. Brakegate, Ltd., 164 Ill. 2d 54, 62-64, 206 Ill. Dec. 636, 645 N.E.2d 888 (Ill. 1994). The agreement is "a necessary and important" element of this cause of action. Adcock, 164 Ill. 2d at 62. The civil

conspiracy theory has the effect of extending liability for a tortious act beyond the active tortfeasor to individuals who have not acted but have only planned, assisted, or encouraged the act. Adcock, 164 Ill. 2d at 62-63.

Civil conspiracy is an intentional tort and requires proof that a defendant "knowingly and voluntarily participates in a common scheme to commit an unlawful act or a lawful act in an unlawful manner." Adcock, 164 Ill. 2d at 64. Accidental, inadvertent, or negligent participation in a common scheme does not amount to conspiracy. Adcock, 164 Ill. 2d at 64. Mere knowledge of the fraudulent or illegal actions of another is also not enough to show a conspiracy. Tribune Co. v. Thompson, 342 Ill. 503, 530, 174 N.E. 561 (1930). Similarly, "[a] defendant who innocently performs an act which happens to fortuitously further the tortious purpose of another is not liable under the theory of civil conspiracy." Adcock, 164 Ill. 2d at 64. However, "[a] defendant who understands the general objectives of the conspiratorial scheme, accepts them, and agrees, either explicitly or implicitly to do its part to further those objectives is liable as a conspirator." Adcock, 164 Ill. 2d at 54.

Defendants contend that Plaintiffs' allegations do not satisfy the stringent standards for pleading conspiracy. Although Fed. R. Civ. P. 8 requires that a pleading contain only a "short and plain statement" of the claim, a charge of conspiracy must ordinarily contain more than conclusory allegations. Frymire v. Peat, Marwick, Mitchell & Co., 657 F.Supp. 889, 895 (N.D. Ill. 1987). The plaintiff must identify the nature of the conspiracy and each defendant's role in it with some specificity. Since conspiracy rests on agreement, the plaintiff must allege with some specifity facts sufficient to show an agreement between the parties to inflict the alleged wrong. Id. at 895-96. The plaintiff may, however, satisfy the pleading requirements simply by alleging

sufficient facts from which a conspiracy can be inferred. Quinones v. Szorc, 771 F.2d 289, 291 (7th Cir. 1985) (district court erred in requiring that a complaint plead specific facts detailing the conspiracy's formation).

In this case, the plaintiffs sufficiently plead conspiracy. Plaintiffs' Complaint identifies the nature of the conspiracy, the conspirators, and the actions the alleged conspirators took in furtherance of the conspiracy. Plaintiffs may be able to prove facts in support of their claim of civil conspiracy. Accordingly, Durrel's motion to dismiss for failure to state a claim upon which relief may be granted is denied.

## Conclusion

For the foregoing reasons, the LaSalle Defendants' motion to dismiss for failure to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6) is GRANTED on Counts I, VI, VII, and VIII and DENIED on Counts II, III, IV, V, and IX of the Complaint. Durrel's motion to dismiss for failure to state a claim upon which relief may be granted is DENIED.

Enter:

_____
David H. Coar
United States District Judge

Dated: MAR 5 - 2002